UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ROBERT D. M.,[1]

                          Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.

DECISION AND ORDER

1:19-cv-00865 (JJM)

_____

        This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff was not entitled to disability insurance benefits ("DIB"). Before the court are the parties' cross-motions for judgment on the pleadings [10, 16].[2]  The parties have consented to my jurisdiction [18].  Having reviewed the parties' submissions [10, 16, 17], the Commissioner's motion is granted.

---

[1]     In accordance with the guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Western District of New York on November 18, 2020 in order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff by first name and last initial.

[2]     Bracketed references are to the CM/ECF docket entries. Page references to the administrative record are to the Bates numbering.  All other page references are to the CM/ECF pagination (upper right corner of the page).

## BACKGROUND

The parties' familiarity with the 670-page administrative record [7] is presumed. Plaintiff filed an application for DIB in November 2015, alleging a disability beginning on March 21, 2015, due to physical and mental health issues. Id., pp. 13, 16, 171, 241.

After plaintiff's claims were initially denied, an administrative hearing was held on April 6, 2018 before Administrative Law Judge ("ALJ") Ellen Parker Bush. Id., pp. 34-79 (transcript of hearing). Plaintiff, who was represented by an attorney, testified along with a vocational expert ("VE"). Id., pp. 41-77. On July 3, 2018, ALJ Bush issued a decision concluding that plaintiff was not disabled. Id., pp. 13-28. To reach that determination, ALJ Bush found that plaintiff's severe impairments were: coronary artery disease status post stent insertion; diabetes mellitus II; obesity; anxiety; depressive disorder; and post-traumatic stress disorder ("PTSD"). Id., p. 16.[3] The record contains the following medical opinions concerning plaintiff's functional, non-exertional, limitations:

    1.    Consultative examiner Gina Zali, Ph.D. examined plaintiff on April 11, 2016. Id., pp. 385-389. She diagnosed plaintiff with "[a]djustment disorder, persistent with depression and anxiety". Id., p. 388. She opined that plaintiff had "mild limitations learning new tasks" and "moderate limitations appropriately dealing with stress", but no limitations in other areas of mental functioning. Id.

    2.    State agency psychiatrist H. Tzetzo, M.D. reviewed plaintiff's medical records, including Dr. Zali's report, in April 2016. He concluded that the "totality of

---

[3] ALJ Bush found that plaintiff's other physical impairments of hypertension, hyperlipidemia, and irritable bowel syndrome with diarrhea were non-severe. Administrative Record, p. 16. Plaintiff does not challenge these findings.

evidence is consistent with moderate limitations" and opined the plaintiff "can handle simple work tasks – involving mainly brief and superficial contact with supervisors, coworkers and the public".  Id., p. 87.

3.     Plaintiff's treating psychologist, Renee Baskin, Ph.D. authored a report on April 3, 2018.  Id., pp. 613-616.  She diagnosed plaintiff with "Major Depressive Disorder, Severe, Recurrent Episode, with anxious distress" and PTSD.  Id., p. 616.  She opined that plaintiff's "[a]ttention and concentration were mildly impaired due to emotional distress" and that his "[r]ecent and remote memory skills were mildly impaired", but that his "insight and judgment are good".  Id., p. 615.  In addition, Dr. Baskin opined that plaintiff was moderately and markedly limited in a number of functional areas:

> **Medical Source Statement:**
>
> He is *moderately* limited in the ability to
> - Follow and understand simple directions and instructions
> - Perform simple tasks independently
>
> He is *markedly* limited in the ability to
> - Maintain attention and concentration
> - Maintain a regular schedule
> - Learn new tasks
> - Perform complex tasks independently
> - Make appropriate decisions
> - Relate adequately with others
> - Appropriately deal with stress

Id.  Dr. Baskin also completed on April 3, 2018 a Mental Residual Functional Capacity Form.  Id., pp. 629-31.  On this form, Dr. Baskin checked boxes indicating that plaintiff had a "Fair" or "Poor/None"[4] ability to perform the many tasks listed.  Dr. Baskin

---

[4]     The form defined "fair" as "[s]ubstantial loss of ability to perform the named activity in regular, competitive employment and at best, could do so only in a sheltered work setting where special considerations and attention are provided".  The form defined "poor/none" as "[c]omplete loss of ability

- 3 -

asserted that plaintiff's impairments "existed and persisted" at least since March 21, 2015.  Id., p. 631.

4. Plaintiff's treating Psychiatric Mental Health Nurse Practitioner, Sarah Conboy, also completed a Mental Residual Functional Capacity Form on April 18, 2018. Similar to Dr. Baskin, she rated plaintiff's ability to perform each of the mental abilities listed as "fair" or "poor/none".  Id., pp. 664-65.  NP Conboy explained her assessment:

> "Client has fluctuations in ability to function.  He has been working with me and counseling for some time and has not shown stabilization or symptom remission.  He can function it seems for brief periods of time but depression rotates between mod[erate] (at best) – to severe."

Id., p. 666.

Based upon the medical evidence and plaintiff's testimony, ALJ Bush concluded that plaintiff had the residual functional capacity ("RFC") to perform medium work, with several modifications:

> "After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work[5] . . . except: he can sustain focus well enough to complete three or four step tasks.  Additionally, he can adapt to infrequent changes to tasks, but cannot work in team or tandem ad can only tolerate brief superficial contact with others.  Lastly, he will be off task no more than 10 percent of the workday for a bathroom break."

Id., p. 19.

In support of her RFC, ALJ Bush conducted a four-page analysis of plaintiff's mental health treatment records, the functional assessments, and plaintiff's testimony.  She gave

---

to perform the names activity in regular, competitive employment <u>and</u> in a sheltered work setting; could do so only to meet basic needs at home".  Id., p. 629.

5   Plaintiff does not contest this finding.

"significant" weight to Dr. Zali's opinion.[6]  Id., p. 24.  ALJ Bush outlined Dr. Zali's report, conclusions, and medical source statement concerning plaintiff's nonexertional functional abilities.  Id., pp. 23-24.  She considered Dr. Zali's opinion "well-supported by detailed clinical findings" and noted that Dr. Zali "is a specialist in the field of psychology whose opinion warrants close consideration."  Id., p. 24.  She recognized, however, that Dr. Zali "is not a treating psychologist and lacks the advantage of monitoring the claimant's progress over time".  Id.  For this reason, she gave "somewhat more credit to the claimant's allegations".

ALJ Bush also assigned "significant" weight to Dr. Tzetzo's opinion that plaintiff's "severe affective and anxiety disorders . . . cause no more than moderate limitations in social functioning, concentration, persistence or pace".[7]  Id., p. 25.  She recognized that Dr. Tzetzo's opinion was based upon the mental health criteria previously in place.  Id.  Nonetheless, Dr. Tzetzo's "opinion does suggest that the claimant's condition is not disabling and thus is consistent with the medical evidence of the record as a whole", including plaintiff's "essentially routine and/or conservative" treatment.  She acknowledged that Dr. Tzetzo was "a non-examining doctor", but also noted that "State agency consultants are considered experts I the Social Security disability programs whose opinions warrant close consideration".  Id.

ALJ Bush accorded "little" weight to Dr. Baskin's functional report and to Dr. Baskin's and NP Conboy's form assessments.  Id., pp. 23, 25.  ALJ Bush noted that Dr. Baskin "is a treating doctor and is in a good position to monitor the claimant's mental health over a period of time".  Id., p. 23.  Even so, she found that "the record as a whole does not reflect the

---

[6]     Plaintiff does not challenge the specific weight that ALJ Bush assigned to Dr. Zali's opinion.

[7]     Plaintiff does not challenge the specific weight that ALJ Bush assigned to Dr. Tzetzo's opinion.

significant restrictions given" in Dr. Baskin's report. Id. To support her finding, ALJ Bush recapped her analysis of the evidence contained in plaintiff's treatment records:

> "As discussed above, the claimant continues to be employed, albeit on a part-time basis and also volunteers to record sport games at a high school. He has been the primary care-taker of his physically impaired wife, an emotional teen-ager and younger grandchildren during a period of high stress. Treatment notes show that claimant has managed to cope efficiently with the various needs of his family members. While admittedly difficult, the record provides no objective evidence that the claimant's mental condition has worsened during the relevant period in that there is no evidence of emergency room or impatient treatment or referrals for more intensive outpatient treatment. "

Id. ALJ Bush assigned "little" weight to both Dr. Baskin's and NP Conboy's functional capacity forms for the same reasons:

> "I give little weight to both of these opinions because they are not consistent with the medical evidence of record as a whole. The record shows that the claimant continues to perform skilled tasks at both his paid part-time job and his volunteer position at the high school. His caretaking abilities at home for his wife and assorted grandchildren have also been consistent and commendable. Notably, the claimant testified that he is able to perform the volunteer work on a full-time basis, if he does not have to interact with other people."

Id., p. 25.

Based on the RFC and the VE's testimony, ALJ Bush concluded that plaintiff retained the ability to perform other jobs in the national economy, and therefore was not disabled from March 21, 2015, the alleged onset date, through the date of her decision. Id., pp. 27-28. The Appeals Council denied plaintiff's request for review. Id., pp. 1-6. Thereafter, this action ensued.

DISCUSSION

A.  Standard of Review

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)).  Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).

An adjudicator determining a claim for Social Security benefits employs a five-step sequential process. Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920.  The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five.  Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

B.   **Did the Vocational Expert's Testimony Satisfy the Commissioner's Limited Burden of Proof at Step 5?**

Plaintiff first argues that the VE's testimony was insufficient to support the Commissioner's burden of proving, at step 5 of the analysis, that there is gainful work in the national economy that plaintiff could perform, given his RFC.  *See* Plaintiff's Memorandum of Law [10-1], pp. 19, 20-21; *see also* Talavera, supra.  Specifically, the VE testified that, for the types of jobs she identified (which would be able to be performed by an individual with the limitations outlined in both the first and second hypotheticals posed by the ALJ), an employer would typically tolerate an employee being off task for 10% of the workday.  Administrative Record [7] pp. 73.

Upon questioning by plaintiff's attorney, the VE testified that, if an individual "in the first hypothetical . . . also required . . . unpredictable bathroom breaks" of an "additional 30 minutes outside of the regularly scheduled work breaks", "that would not be tolerated without special accommodation" "if that occurred on a regular and ongoing basis". Id., pp. 74-75. Plaintiff argues that this testimony is inconsistent with the VE's testimony that an employer would tolerate an employee being off task "up to 10%" of the workday (*i.e.* up to 48 minutes per day). Plaintiff's Memorandum of Law [10-1], p. 20. Accordingly, plaintiff argues, because the first hypothetical posed to the VE did not include a condition of being off task up to 10% of the day, the VE's testimony is not substantial evidence to support the RFC. Id.

I agree with the Commissioner that the VE's testimony is not inconsistent. It can fairly be read to support the ALJ's finding that a person with an RFC that included an acknowledgment that a person would be "off task no more than 10 percent of the workday for a bathroom break" (id., p. 19) could perform jobs that exist in the national economy (id., p. 27). First, the VE's testimony concerning an employer's tolerance of time off-task was an opinion concerning a feature of the "types of jobs" she had previously identified. Id., p. 73. Plaintiff's attorney's question, however, asked the VE to comment upon "additional" time needed for bathroom breaks "outside of regularly scheduled work breaks". Id., p. 75. Given that the questions from plaintiff's attorney immediately followed the ALJ's questioning concerning off-task time, I think a fair reading of the VE's testimony supports the ALJ's findings.

Moreover, none of the cases cited by plaintiff in either his Memorandum of Law [10-1] or his Reply [17] support his argument that the VE's testimony in this regard fails to support the ALJ's findings under these - or analogous - circumstances. *See e.g.* Baylis v. Colvin, 2015 WL 5642921, *9-10 (N.D.N.Y. 2015) (remanding to the ALJ because ALJ found claimant

could perform work in the economy with an RFC "limited to simple, unskilled work", while none of the hypotheticals the ALJ posed to the VE contained this limitation, and the occupations identified by the VE were semi-skilled); see also King v. Colvin, 2015 WL 5554987, *5-7 (D. Vt. 2015) (remand required where ALJ found claimant was limited to "occasional reaching" in all directions, but this limitation was not presented to the VE, and where the VE testified that all the jobs identified in response to the posed hypotheticals "required more than occasional reaching"); McIntyre v. Colvin, 758 F.3d 146, 152 (2d Cir. 2014) (ALJ's failure to include in hypothetical posed to VE plaintiff's limitations in concentration, persistence, and pace was harmless error where the hypothetical explicitly limited the plaintiff to "simple, routine, low stress tasks"); Garcia v. Colvin, 2015 WL 5786506, *23-24 (S.D.N.Y. 2015) (where ALJ's RFC limited plaintiff to sedentary work with additional limitations, remand was required where ALJ posed hypothetical to VE that assumed an individual capable of both light and sedentary work, lacked any mention of plaintiff's learning disability, and did not include plaintiff's additional physical limitations); Baylis v. Colvin, 2015 WL 5642921, *9-11 (N.D.N.Y. 2015) (remanding for further development of the record, including posing a proper hypothetical to the VE, where the ALJ did not include in his hypothetical to the VE the limitation to "simple, unskilled work" and the occupations identified by the VE were semi-skilled).

    Finally, plaintiff argues in his Reply that remand is required because "there is no record evidence to support 10% [off task] rather than 12% or some other percentage". Reply [17], p. 4. This court generally does not consider arguments raised for the first time in a reply brief. McFall v. Colvin, 2016 WL 1657877, *8 (W.D.N.Y. 2016). Even had this argument been properly raised, however, it is not a basis for remand. The ALJ discussed this very point at step two of her analysis, when she determined that the plaintiff's complaints of diarrhea episodes did

not support "disabling limitations". Administrative Record [7], p. 16. After outlining the medical evidence on this point, ALJ Bush concluded that "[t]he medical evidence of record as a whole suggests that he claimant's diarrhea condition is not significantly limiting" and found that plaintiff's "irritable bowel syndrome with diarrhea impairments" were "non-severe". Id. Nonetheless, ALJ Bush explained that "as a precaution, I have provided an accommodation for off task behavior in order for him to use the bathroom".

Plaintiff does not challenge this finding at step 2 of the analysis. Moreover, plaintiff fails to cite to any medical record to demonstrate that a limitation greater than 10% of time off-task is appropriate here. "Ultimately it is [p]laintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ". Beaman v. Commissioner, 2020 WL 473618, *6 (W.D.N.Y. 2020).

C.   **Did ALJ Bush Properly Assess Dr. Baskin's and NP Conboy's Opinions?**

Plaintiff argues the ALJ erred when she assigned "little weight" to the functional assessments of Dr. Baskin and NP Conboy. Plaintiff's Memorandum of Law [10-1], p. 22-26. Although plaintiff agrees that ALJ Bush was not required to find these opinions controlling (id., p. 22-23), he argues the ALJ failed to give "good reasons" to reject the opinions of plaintiff's treating mental health providers. Id., pp. 23-24.

The Commissioner argues that the ALJ's assignment of "little weight" to the functional assessments of Dr. Baskin and NP Conboy was supported by substantial evidence and that the "extreme limitations" in those opinions "stood in direct conflict with the objective medical evidence". Commissioner's Brief [16-1], pp. 15-16.

I agree with the Commissioner. It is well settled that the RFC need "not perfectly correspond with any of the opinions of medical sources cited in his decision". Matta v. Astrue, 508 Fed. Appx. 53, 56 (2d Cir. 2013) (Summary Order). When an ALJ rejects an opinion from a medical source concerning plaintiff's functional abilities, he or she must explain why the opinion was not adopted. See Dioguardi v. Commissioner of Social Security, 445 F.Supp.2d 288, 297 (W.D.N.Y. 2006) ("[u]nder the Commissioner's own rules, if the ALJ's 'RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.' Soc. Sec. Ruing 96-8p (1996)"). A treating physician's opinion is accorded "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record". 20 C.F.R. §§404.1527(c)(2); 416.927(c)(2). If the treating physician's opinion does not meet this standard, the ALJ may discount it, but is "required to explain the weight it gives to the opinions of a treating physician . . . Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999). See also 20 C.F.R. §§404.1527(c)(2), 416.927(c)(2). "The ALJ must consider, *inter alia*, the '[l]ength of the treatment relationship and the frequency of examination'; the '[n]ature and extent of the treatment relationship'; the 'relevant evidence . . ., particularly medical signs and laboratory findings,' supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008) (*citing* 20 C.F.R. §404.1527(d), now (c)).[8] Social Security Ruling ("SSR") 06-03P[9] states that the same factors used to consider opinions from "acceptable medical sources" (like Dr. Baskin, a licensed psychologist) will be

used to examine evidence from medical sources who are not "acceptable medical sources", such as nurse practitioners (like NP Conboy). SSR 06-03P, 2006 WL 2329939 (2006), pp. *1-4.

        Here, ALJ Bush's decision demonstrates that she considered each of the Burgess factors and concluded that the opinions of Dr. Baskin and NP Conboy were entitled to "little weight". She noted that these practitioners were plaintiff's treating providers. Administrative Record [7], pp. 22 (describing Dr. Baskin as the plaintiff's "treating psychologist"), 23 ("[i]n determining how much weight to give to Dr. Baskin's opinion, I note that she is a treating doctor and is in a good position to monitor the claimant's mental health over a period of time"), 24 (describing NP Conboy as plaintiff's "primary treating nurse"). She cited to both their functional assessments and their treatment notes in her discussion of the evidence. *See* id., pp. 22-25 (citations to exhibits 10F, 11F, 17F, 18F, 20F, and 22F). ALJ Bush acknowledged that their treatment of plaintiff spanned years. *See* id. (citing both Dr. Baskin's and NP Conboy's treatment notes generally and citing specifically to treatment notes from sessions in May 2015, August 2015, February 2016, January 2017, June 2017, October 2017, November 2017, and March 2018). ALJ Bush discussed the objective findings that Dr. Baskin incorporated into her April 3, 2018 functional assessment and the objective findings that NP Conboy incorporated into her treatment notes. *See* id., pp. 23-24. She compared and contrasted Dr. Baskin's and NP Conboy's opinions on their functional assessments to their objective findings on examination and

---

[8]   "The Social Security Administration adopted regulations in March 2017 that effectively abolished the treating physician rule; however, it did so only for claims filed on or after March 27, 2017." Montes v. Commissioner of Social Security, 2019 WL 1258897, *2 n. 4 (S.D.N.Y. 2019). This claim was filed before that date. Administrative Record [7], p. 13.

[9]   SSR 06-03P was rescinded for claims filed on or after March 27, 2017. *See* 82 F.R. 15263-01, 2017 WL 1105348 (F.R.) (March 27, 2017) ("This rescission will be effective for claims filed on or after March 27, 2017"). This claim was filed before that date. Administrative Record [7], p. 13.

to the activities that plaintiff reported during his sessions with Dr. Baskin and NP Conboy. *See*, *e.g.* id., pp. 22-23 (noting plaintiff's continued paid work "performing medical and television work for five Pentecostal churches" and volunteer work performing "on-site filming for the Canisius high school sports events", taking care of his wife who "suffered significant fractures of the lower extremities that resulted in . . . being house-bound" and obtaining "temporary custody their oldest granddaughter", including overseeing her compliance with "court-mandated probation and counseling"). ALJ Bush further considered that, despite plaintiff's challenging life circumstances during the period at issue, plaintiff "managed to cope efficiently with the various needs of his family members" and that "the record provides no objective evidence that the claimant's mental condition has worsened" during that time. Id., p. 23.

Given the ALJ's extensive citation to the record and her lengthy discussion of the evidence that included consideration of all of the Burgess factors, I find that substantial evidence supports her determination to assign "little" weight to the functional assessments of Dr. Baskin and NP Conboy.

**D. Does the Mental RFC Sufficiently Account for Plaintiff's Stress?**

Plaintiff finally argues that ALJ Bush's "failure to make specific findings concerning Plaintiff's ability to deal with work stress was reversible error requiring remand". Plaintiff's Memorandum of Law [10-1], p. 27. The Commissioner responds that "the RFC contained significant limitations that accounted for Plaintiff's difficulties with stress". Commissioner's Brief [16-1], p. 16. Because the plaintiff "testified that his stress stemmed from being around people . . . the restrictions to simple work, infrequent work changes, and limiting [plaintiff] to work with little contact, specifically addressed [p]laintiff's difficulties with stress". Id. I agree with the Commissioner.

Dr. Zali's functional assessment, to which ALJ Bush assigned "significant" weight, opined that plaintiff had "[m]oderate limitations appropriately dealing with stress". Administrative Record, pp. 24, 388. Plaintiff testified that he considers himself "a person who can't work full-time" because he "just can't tolerate people". Id., p. 45. Although plaintiff was not sure he could work eight hours in a day, he nonetheless testified:

> "Q: What I'm wondering, Robert, is if this work, being isolated away from people, doing this thing you do well, and you had an education and training to do, if that work was available to you full-time, what would prevent you from being able to do that?
>
> A: If I could work alone, nothing."

Id., p. 63.

"There is plethora of case law within the Second Circuit holding that a RFC for simple routine work is not inherently inconsistent with limitations in the plaintiff's ability to deal with stress, or other specific areas of mental functioning, particularly where the source who provided such limitations ultimately opined the plaintiff is capable of performing simple, routine, repetitive work." Shirback v. Commissioner of Social Security, 2020 WL 247304, *4 (W.D.N.Y. 2020). For example, in Wright v. Berryhill, 687 Fed. Appx. 45, 48–49 (2d Cir. 2017) (Summary Order), while the plaintiff "had mild to moderate limitations . . . relating adequately with others, and appropriately dealing with stress, he was nonetheless able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, make appropriate decisions, and maintain a regular schedule". Based on that evidence, the Second Circuit found that it was unable to "conclude that a reasonable factfinder would *have to conclude* that the Plaintiff lacked the ability to perform" the ALJ's mental RFC. Id. at 49 (emphasis in original). *See also* Ramsey v. Commissioner of Social Security, 830 Fed. Appx. 37, *39 (2d Cir. 2020) (Summary Order) (substantial evidence "is a 'very deferential

standard of review - even more so than the clearly erroneous standard.'. . . Notably, if the evidence 'is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld'").

The same holds true here. ALJ Bush's RFC limited plaintiff to work that required only "three or four step tasks" with "infrequent changes to tasks". Administrative Record, p. 16. The RFC also specified that plaintiff "cannot work in team or tandem and can tolerate brief superficial contact with others". Id. This RFC is consistent with the significant weight that ALJ Bush gave to Dr. Zali's opinion and with the plaintiff's testimony that his primary stressor was other people. Id., pp. 45, 63, 388.

As the Commissioner argues (and plaintiff does not dispute in his reply), the unskilled jobs that ALJ Bush found plaintiff was capable of performing (id., p. 27) are suitable to the moderate limitation in dealing with stress assessed by Dr. Zali. See Cowley v. Berryhill, 312 F. Supp. 3d 381, 384 (W.D.N.Y. 2018) ("[t]o the extent that the ALJ's failure to include a 'low stress' limitation in plaintiff's RFC in order to fully account for the limitations opined by Dr. Lin is alleged to be erroneous, any such error is harmless", since "unskilled jobs . . . are suitable for claimants with limitations to 'low-stress' work"); Carthron-Bush v. Commissioner of Social Security, 2017 WL 9538379, *7 (N.D.N.Y. 2017), adopted, 2018 WL 333827 (N.D.N.Y. 2018) ("[t]he ALJ's mental RFC determination was consistent with Dr. Shapiro's opinion that Plaintiff had mild to moderate limitations in her ability to interact with others because even a finding of moderate limitations in social functioning does not preclude the ability to perform unskilled work").

## CONCLUSION

For these reasons, the Commissioner's motion for judgment on the pleadings [16] is granted and the plaintiff's cross-motion [10] is denied.

**SO ORDERED**.

Dated: March 29, 2021

__/s/ Jeremiah J. McCarthy_____
JEREMIAH J. MCCARTHY
United States Magistrate Judge
